No. 319.—Succession of John Liles, Sr.—Final Account of C. H. Morrison, Executor—Opposition of J. H. Mitchell, Dative Testa-. mentary Executor.

If the evidence shows that loss has occurred to the succession by the gross carelessness of the executor, and that his administration, instead of being beneficial, has been injurious to the succession, the executor will not be allowed commissions. 4 An. 578.

To entitle the surviving widow to the one thousand dollars under the homestead act, it must be shown affirmatively that she is in necessitous circumstances.

Suits brought by attorneys before the death of the client may be prosecuted by the same attorneys after his death, notwithstanding one of the attorneys may become his executor, and all the privileges accorded by law on judgment obtained or property seized as security for the attorneys' fees will attach in favor of such attorneys.

An executor who is a professional man is not permitted to charge for legal services which he has rendered the estate while under administration.

APPEAL from the Parish Court, parish of Ouachita. *Robert J. Caldwell*, Parish Judge. *C. H. Morrison* (in person), plaintiff and appellant. *W. J. Q. Baker*, for opponent and appellee.

Ludeling, C. J. This appeal is taken by C. H. Morrison from a judgment on the final account by him rendered under the decree of this court in the case of John C. Rogers v. C. H. Morrison, executor.

The appellee has asked for an amendment of the judgment in three particulars, by disallowing—first, the two and a half per cent. on the amount of the inventory claimed as commissions due the executor; secondly, the credit claimed for $805 alleged to have been paid to Mrs. Liles under the homestead act of 1852; and, thirdly, the amount of $575 claimed by Morrison & Farmer for fees.

It is admitted that there is an error of calculation in the statement of the accountant of one hundred dollars against himself, and it is evident that the judge *a quo* fell into an error when he added to the debit side of the account the items, amounting to $381 73, claimed as credits, but disallowed by the judge. The contest thus seems to be narrowed down to the questions presented by the answer of the appellee to this appeal.

*First*—Is the accountant entitled to the two and a half per cent. commissions allowed by law for administering estates?

The accountant avers in his brief that "In this opposition there is no malfeasance alleged or shown. Had there been, and the acts of malfeasance set forth, accountant would have been allowed to and would have shown that his administration had been successful and to the best interest of the estate."

The opposition to this item is in the following words: "The credit claimed—amount of my commissions as executor being two and a half per cent. on amount accounted for, to wit, $27,404 53, on page seven, amounting to $685, is opposed; first, because the said Morrison having been removed from his office of executor *for malfeasance* is not entitled to any commissions," etc.

And the accountant further says : "The judgment in the Rogers case decrees no such penalty or forfeiture, and this court can not amend that judgment." The question about the fees of the executor was not before the court in that case, but the question of malfeasance was, and the court held that the executor was "at least so grossly careless" that his removal from office was decreed. And the court further said : "We think it established by the record that the Home place really contained about five hundred and ninety acres, and that its sale for five thousand two hundred and fifty dollars, *if maintained*, would *result in a great loss to the estate.*" 21 An. 457. In the 23 An. 630 it was held that this sale was valid on the ground that Levi, who bought, was in good faith.

It is manifest, therefore, that loss to the estate has resulted "at least from the gross carelessness" of the executor. In the succession of Lee it was held that "when an administration, instead of being beneficial, has been injurious to a succession, the administrator will not be allowed commissions." 4 An. 578.

This is in consonance with equity and the textual provisions of the Civil Code. "The attorney is responsible not only for unfaithfulness in his management, but also for his fault or neglect. Nevertheless, the responsibility with respect to faults is enforced less rigorously against the mandatory acting gratuitously than against him who receives a reward." Article 3003 (2972.)

*Second*—The next item opposed is the claim allowed to the widow under the homestead act. There is no evidence that she was in necessitous circumstances at the death of Liles. The evidence, on the contrary, shows that Mrs. Liles bought the "Reuben Frantom" tract of land for $3251, and that the price was paid. The executor paid this amount without an order of court, and he has failed to prove that it was a just claim against the estate. The credit claimed for this amount must therefore be rejected.

*Third*—The item for $575 is claimed for fees due Morrison & Farmer for professional services rendered to the deceased and the succession after his death. They claim that there exists a privilege in their favor for this sum. The facts in regard to the litigation in which the fees are charged are substantially these: During the lifetime of Liles he employed Morrison & Farmer to collect a claim for rent against M. C. Hardy, amounting to about $1900, with interest. The movable property of the lessee was sequestered in that suit to secure the lessor's privilege. Several other creditors of Hardy, all claiming privileges against the property of Hardy, sequestered as aforesaid, also filed suits against Hardy and intervened in the suit of Liles *v.* Hardy. After considerable litigation eight hundred and fifty-seven dollars were realized after the death of Liles on his claim for rent against Hardy. The judge *a quo*

allowed $200 as a fee with a privilege upon the fund realized under the judgment, and the balance of the fee as an ordinary claim. We think two hundred dollars a full fee for prosecuting the claim of Liles and asserting the lessor's privilege on the property sequestered, and that the attorneys had a privilege on the fund realized under the judgment to secure their fees. And we are further of opinion that the fact that Morrison afterward became executor of John Liles, Sr., did not prevent the firm, of which he was a member, from prosecuting suits instituted by them before the death of Liles.

As to the charge for services in the case of Dowdy v. Morrison, executor, which was a suit for fifteen hundred and sixty-four dollars, it appears that Morrison & Farmer filed an answer and the plea of prescription, and that the case is yet untried. This item and the other fees charged in favor of Morrison & Farmer are resisted on the ground that Morrison, being executor, could not charge for professional services rendered to the estate. As to Morrison, this position is unquestionably correct. In the case of the succession of Key, the following language is used : "In the case of Baldwin's executor v. Carleton, 15 La. 397, the court virtually adopted the English rule that an executor, who is also a professional man, and renders legal services to the estate he administers, is not entitled to any separate compensation." The reason of the rule is that the best counsel should be selected and employed on the best terms. Judge Martin, in delivering the opinion of the court, remarked that it was the duty of the executor to make such selection; "but it was his interest in this case that he should be employed at all events, and as his conduct has shown, on the very highest terms. In our opinion he succumbed to the temptation." 5 An. 567 ; 15 La. 399.

There is no evidence in this record to show what services, if any, were performed by Mr. Farmer; or, in other words, to show whether Morrison or Farmer rendered the services charged for, and this constitutes the single difference between the case of the succession of Key and the one now under consideration. In that case it was shown affirmatively that Haskell, the curator, had performed the services for which fees were claimed for the firm of Simon & Haskell. On the authority of the cases of Baldwin's executor v. Carleton and the succession of Allen J. Key, above referred to, and which we approve, we think the fees to Morrison & Farmer for services rendered in matters arising subsequent to the death of Liles, should be disallowed. By correcting the error of calculation made by the executor against himself, and deducting the following sums from the credits claimed, to wit, $685 11 commissions, $805 paid Mrs. Liles, and $375 attorneys' fees, which are disallowed, we find that the accountant owes fourteen hundred and ninety-eight dollars and five cents, with five per cent. per annum interest from this date. C. P. 1007.

It.is therefore ordered and adjudged that the judgment of the lower court be annulled, and that there be judgment in favor of J. H. Mitchell, dative testamentary executor of John Liles, Sr., against Charles H. Morrison for fourteen hundred and ninety-eight dollars and five cents, with five per centum per annum interest thereon from this day, and costs of appeal; and that the account rendered be in other respects homologated.

## On Application for Rehearing.

The counsel for the appellee in this case consented that we might correct any errors in our former judgment without delay or a new trial. We proceed to do so now.

We erred.in stating that the item of the account for amount paid to the widow Mrs. Liles was opposed in the opposition to the account.

We were led into the error by the answer of the appellee praying for an amendment in this particular, by the brief of the appellee, and by the silence of the defendant on that point. The *procès verbal* of the sale of the property of the succession shows that the property was sold to Mrs. Liles; but as this item was not specially opposed, we erred in making any change in the account as to that item.

It is therefore ordered and adjudged that our former decree be so amended as to reduce the judgment against Charles H. Morrison to the sum of six hundred and ninety-three dollars and five cents, for which judgment should originally have been rendered, and for which judgment is now rendered.